TOWNSHIP OF MIDLAND, APPELLEE, V. COUNTY BOARD
OF GAGE COUNTY ET AL., APPELLANTS.

FILED SEPTEMBER 20, 1893. No. 3452.

1. **Railroad Companies:** CONSTRUCTION OF ROAD: TOWNSHIP
BONDS: VARIANCE BETWEEN PETITION FOR ELECTION AND
PROPOSITION VOTED UPON. Fifty freeholders of Midland town-
ship, in Gage county, petitioned the board of supervisors to call
an election in said township and submit to the electors thereof
a proposition to vote bonds to aid a certain railroad company to
construct its railroad into and through said county of Gage.
The supervisors called an election and submitted to the electors
of said township the proposition to vote bonds to aid said rail-
road company in the construction of its road into and through
said township. *Held,* As no part of the railroad was built in the
township, the railroad company was not entitled to the bonds
voted.

2. ———: ———: ———: ———: TRANSFER OF RIGHTS OF DONEE:
INJUNCTION. The electors of Midland township, in Gage county,
by a vote, authorized the supervisors of said county to issue and
deliver the bonds of said township to a railroad company desig-
nated, upon the construction by it of a certain railroad. The
railroad company named as donee failed to build the road, sold
out its property and franchises, and its vendee built the improve-
ment and claimed the bonds. *Held,* That the electors of the
township are entitled to stand upon the very letter of their prom-
ise; that the supervisors of the county were special agents of the
electors of the township with limited powers, and would be en-
joined at the suit of the township from delivering the bonds to
the vendee of the company named as donee in the election pro-
ceedings.

APPEAL from the district court of Gage county. Heard
below before BROADY, J.

*Hazlett & Bates* and *Brown & Craig,* for appellants:

The mistake made by the board of supervisors in sub-
stituting the word "township" in the call and notice of
election for the words "county of Gage" contained in the

petition of the freeholders, was an immaterial clerical error, which could have had no effect upon the result of the election, and could not, consequently, effect its validity.  Ch. 45, sec. 14, Comp. Stats., gave the township the right to aid any railroad in constructing its line into the city of Beatrice, Gage county, even though it should not enter the township. (*State v. Babcock*, 23 Neb., 179; *Quincy, M. & P. R. Co. v. Morris*, 84 Ill., 410; *St. Joseph & D. C. R. Co. v. Buchanan County Court*, 39 Mo., 485; *Walker v. Cincinnati*, 21 O. St., 14; *Council Bluffs & St. J. R. Co. v. Otoe County*, 16 Wall. [U. S.], 667; *Bell v. Mobile & O. R. Co.*, 4 Id., 598.) If any taxpayer was deceived he must not only show it, but must act promptly in protesting, and not wait until the work is completed and thus secure all the benefits while escaping his obligation to pay. (*Brown v. Merrick County*, 18 Neb., 355, and cases cited.)  The sale and transfer by the Nebraska company of its railroad, constructed and to be constructed, and the appurtenant franchise, to the Kansas company, had no effect upon the contract for the issue of the bonds. (Morawetz, Corporations [2d ed.], secs. 1004, 1010; *Livingston County v. Portsmouth Bank*, 128 U. S., 102; *New Buffalo v. Iron Co.*, 105 Id., 73; *Harter v. Kernochan*, 103 Id., 562; *Bates County v. Winters*, 112 Id., 325; *Menasha v. Hazard*, 102 Id., 81; *Scotland County v. Thomas*, 94 Id., 682; *Town of East Lincoln v. Davenport*, Id., 801; *Wilson v. Salamanca*, 99 Id., 499; *Henry County v. Nicolay*, 95 Id., 619; *Empire v. Darlington*, 101 Id., 87; *Nugent v. Supervisors, Putnam County, Ill.*, 19 Wall. [U. S.], 241.)

*Griggs, Rinaker & Bibb, contra.*

RAGAN, C.

This is an action in equity brought by the township of Midland, in the county of Gage, to restrain the board of supervisors and county clerk of said Gage county from

issuing and delivering certain bonds of said township to the Chicago, Kansas & Nebraska Railroad Company, or to any corporation or person. The district court, on the hearing of the case, made the injunction perpetual. The board of supervisors and county clerk, and the Chicago, Kansas & Nebraska Railway Company, who had been made a party defendant on its own motion, and filed an answer in the case, appealed from the decree of the district court.

The Chicago, Kansas & Nebraska Railroad Company will be hereinafter designated the "railroad company," and the Chicago, Kansas & Nebraska Railway Company will be hereinafter designated as the "railway company."

We have reached the conclusion that the decree of the district court should be affirmed for the following reasons:

1. The petition presented to the board of supervisors by the fifty freeholders of Midland township prayed the board to call an election in said township and submit to the electors thereof the question whether there should be issued to the railroad company $4,000 of bonds of the township to aid the railroad company in constructing its railroad into and through said county of Gage. The proposition, as actually submitted by the supervisors to the electors of the township, and voted upon by them, was whether the township would authorize the board of supervisors to issue the bonds of said township to aid the railroad company in constructing its railroad into and through said township. Here was a variance between what was asked for by the petition and what was submitted and voted upon by the electors of the township. The appellants say that this variance was a mistake or accident on the part of the supervisors, and that the township electors understood at all times that the road was not to be built through the township. We do not know how this may be. There is no such evidence in the record and we have no right to indulge in such a presumption. We only know that the electors voted to issue bonds to aid in the construction of

the railroad into and through their township; and the de-
duction logically follows that if the road was not built
there, the electors of the township did not agree or consent
or promise the donation of the bonds.

The statute regulating the voting of bonds by townships,
counties, cities, etc., to aid in the construction of works of
internal improvement, should be strictly construed in favor
of the electors.   A donee claiming bonds by virtue of an
election and vote of the people, must show a literal com-
pliance with the law and the terms and conditions of the
proposition submitted to and voted on by the electors.
The courts will indulge in no presumptions or construc-
tions in order to enable the claimant of such donation to
sustain the same.   He must make out for himself, through
the law and record, an unambiguous right to the donation
he claims.   The freeholders who signed the petition pray-
ing the board of supervisors to call an election and submit
to the township electors the proposition to aid in construct-
ing the railroad through the county may have been willing
that a tax should be levied on the property of the township
for that purpose, and it is a fair inference that they at least
understood the railroad would not touch their township.
But this township, for aught we know, may have had five
hundred or five thousand electors, two-thirds of whom, if
voting, must agree to the donation to make it valid.   So
far as we are advised by the record, two-thirds of them did
agree to aid in the construction of the improvement, but
with the condition that it should be built through their
township.   It may be that these electors read the notices
of the election published in the newspapers and posted up
in the township.   The presumption is that they did so.
The statement in these notices that the road was to be built
through their township may have controlled their votes,
gained their consent or the consent of a sufficient number
of them to decide the election in favor of the donation.
The fact that the building of the road in their township

would add to the taxable property therein, may have influenced the vote. It is idle to indulge in any conjectures. The question is: Did the electors of this township vote to donate bonds to aid in the construction of this railroad anywhere in Gage county outside of that township? The answer must be "no."

2. The petition presented to the board of supervisors by the freeholders of the township, prayed the calling therein of an election and the submission to the electors of a proposition to aid the railroad company. The proposition submitted to the electors was to aid the railroad company. The electors voted to aid the railroad company and authorized the board of supervisors, on the completion of the improvement by the railroad company, to issue the bonds of the township and deliver them to the railroad company. Yet this railroad company did not complete the improvement. It sold out its property and franchises, and its vendee built the improvement and now claims the bonds. This will not do. If one vendee can claim this aid successfully, any vendee of the railroad company can.

The record discloses that the Union Pacific Railroad Company and the Burlington Railroad Company both have lines of road traversing the country in the vicinity of this township. Suppose the railroad company had sold out to the Burlington or Union Pacific, and the purchasing road had built the improvement. The electors might have been, and perhaps were, influenced and induced to vote this aid with a view to obtaining a competing line of railroad through that country. The electors of the township are entitled to stand on the very letter of their promise. If they promised a donation to A if he would build a certain improvement, it does not follow that B is entitled to the donation, though he builds the improvement; in other words, the township electors designated the donee and only the one designated can take the donation. The electors did not authorize the supervisors to deliver the bonds voted

to the railroad company or its vendee, and had they, it would have been ineffectual and the bonds invalid. (*Jones v. Hurlburt,* 13 Neb., 125; *Spurck v. Lincoln & N. W. R. Co.,* 14 Id., 293; *State v. Roggen,* 22 Id., 118.) The most that can be said for the appellees is that the electors of this township authorized their agents, the board of supervisors, and the county clerk of Gage county, to issue the bonds of said Midland township and deliver them to the railroad company when it had built a certain improvement. The railroad company never complied with the condition coupled with the authority given by the township electors to its agents. The vendee of the railroad has complied with the condition to build the improvement and it now claims these agents should deliver the bonds to it. Authority from a principal to an agent to do a specific act is limited to that act. (*State v. Commissioners of Nemaha County,* 10 Kan., 577.)

In the case last cited the facts were: In 1866 there were two railway companies existing, the one known as the St. Joseph & Denver City Railroad Company, and the other as the Northern Kansas Railroad Company. Each was organized to construct a railroad from Elwood to Marysville, in the state of Kansas, and authorized to receive subscriptions to their capital stock from the county of Nemaha in said state. The county commissioners of Nemaha county, Kansas, submitted to the voters of said county the question of subscribing to the capital stock of the Northern Kansas Railroad Company in the amount of $125,000, and issuing the bonds of the county in payment therefor. The election was duly held and the commissioners of the county were authorized to subscribe for the stock and issue bonds of the county. In October, 1866, the two railroad companies above named, under and by virtue of the laws of Kansas, were consolidated into a single corporation under and by the name of the St. Joseph & Denver City Railroad Company. This company com-

pleted the road according to the proposition submitted to the electors of Nemaha county, and thereupon the commissioners of that county made a subscription to the capital stock of the St. Joseph & Denver City Railroad Company; this company then tendered the supervisors $125,000 of the capital stock of the company and demanded the bonds voted. The commissioners refused to issue the bonds and an application was made to the supreme court for a writ of *mandamus* to compel the commissioners to issue the bonds to the relator, the St. Joseph & Denver City Railroad Company. The opinion of the court was delivered by Justice Brewer. Among other things he said:

" The county commissioners are the agents of the county, but agents with limited and defined powers. They cannot by virtue, merely, of their office, bind the county to a subscription to the capital stock of a railroad corporation any more than could the sheriff, county clerk, or any other county official. A power so vast * * * is wisely entrusted to no official or agent. The people must give their agents the authority to subscribe or they are not bound. We must look, therefore, beyond the mere fact of the subscription, to see what authority the commissioners had to make the subscription. The vote * * * is the alleged authority. Was it authority? The subscription is not within the express terms of the authority. That vote empowered the commissioners to subscribe to the stock of the Northern Kansas Railroad Company. The subscription was to the St. Joseph & Denver City Railroad Company. Upon authority to make the county a stockholder in one corporation, they attempted to make it a stockholder in another. *Prima facie* then, their act was *ultra vires.* * *

" But it is said that the Northern Kansas Railroad Company was, in pursuance of the law, * * * merged in the St. Joseph & Denver City Railroad Company, and that the latter succeeded to all the powers, rights, and franchises * * * of the former. This is all true; but it

does not avail the plaintiff anything. The mere vote of the people, giving the commissioners authority to subscribe, created no contract between the county and the company; gave the latter, as against the former, no rights and imposed no duties. The company had nothing which it could transfer; nothing which its successor could take. The Northern Kansas Railroad Company could not, by virtue of the vote, compel the commissioners to subscribe; neither could the county compel the company to build its road in compliance with the conditions of the vote. Neither had, as against the other, any rights, whether of action or otherwise. * * * Again, it is urged that the law authorizing the consolidation of railroads was in force at the time of the vote, and that, therefore, the vote was based upon that law and authorized the commissioners to subscribe to the stock of the Northern Kansas Railroad Company, or to that of any other company into which it might be consolidated. We do not so understand the law of agency. * * Nor is the authority enlarged because the party with whom the agent is empowered to contract is by law at liberty to change his conditions and relations. A principal empowers an agent to invest his money in a certain named partnership with specific amount of capital. Now, any partnership may, with the consent of its members, change its name, admit new members, and increase its capital. When all this has been done, will any one contend that the agent may, by virtue of the original authority, invest his principal's money in such new partnership? Yet the cases are parallel. Each is a case of principal and agent. In each the authority is specific and definite. Each party with whom the contract is to be made has by law, in force at the time the authority is given, the power to change its relations and conditions. It does make such change. * * * In each the authority of the agent fails. Indeed, it may safely be affirmed, as a general rule, that where an agent has authority to make a specific contract with a

third party, any change in the conditions and relations of that party which would materially modify the contract destroys the power of the agent." And the court denied the writ.

The decree of the district court was right and is in all things

AFFIRMED.

THE other commissioners concur.