STATE OF NEBRASKA, EX REL. SCHOOL DISTRICT NUMBER SIX, THURSTON COUNTY, ET AL. V. EUGENE MOORE, AUDITOR OF PUBLIC ACCOUNTS.

FILED MAY 1, 1895. NO. 7580.

1. **Construction of Statutes.** In the interpretation or construction of statutes, ascertainment of the intention of the legislature is the end or purpose to be accomplished.

State v. Moore.

2. ————. Where a law is plain and certain in its terms and free
from ambiguity, a reading suffices and no interpretation is needed
or proper.

3. ————. Statutes which authorize the issuance of bonds by the
minor political subdivisions of the state are subjects for strict
construction when an interpretation is necessary, and where,
from a careful study and analysis of the whole act and its sev-
eral parts, the meaning and intent is doubtful, the doubt should
be resolved in favor of the public or taxpayers.

4. School Districts: ISSUANCE OF BONDS: PAYMENT OF WAR-
RANTS. The act approved March 30, 1887 (Session Laws, 1887,
p. 100, ch. 9), entitled "An act to authorize counties, precincts,
townships, or towns, cities, villages, and school districts to com-
promise their indebtedness and issue new bonds therefor," held,
not to empower a school district to issue its bonds and deliver
them to parties in compromise, or to take the place, of an in-
debtedness evidenced by school district warrants or orders.

ORIGINAL application for *mandamus* to compel the au-
ditor of public accounts to register certain bonds issued by
the school district to secure the payment of indebtedness
evidenced by its warrants owned by the State Bank of
Pender.   *Writ denied.*

*James H. Macomber,* for relators cited: 1 Dillon, Munici-
pal Corporations, sec. 65; *County of Scotland v. Thomas,*
94 U. S., 682; *County of Cass v. Gillett,* 100 U. S., 585;
*County of Ralls v. Douglas,* 105 U. S., 728; *Commission-
ers of Jefferson County v. People,* 5 Neb., 127; *Lancaster
County v. Trimble,* 33 Neb., 121; *State v. Babcock,* 25 Neb.,
504; *Singer Mfg. Co. v. Fleming,* 39 Neb., 684; *People v.
McCallum,* 1 Neb., 182; *State v. Ream,* 16 Neb., 681.

*A. S. Churchill, Attorney General,* and *W. S. Summers,
Deputy Attorney General, contra,* cited: *City of Tecumseh
v. Phillips,* 5 Neb., 305; *Messinger v. State,* 25 Neb., 674;
*State v. Lancaster County,* 6 Neb., 474; *Holmberg v. Hauck,*
16 Neb., 337; *Touzalin v. City of Omaha,* 25 Neb., 817;
*State v. Hurds,* 19 Neb., 316; *Ives v. Norris,* 13 Neb., 252;
*Burlington & M. R. R. Co. v. Saunders County,* 9 Neb., 507.

HARRISON, J.

It appears from the application for a writ of *mandamus* in this action that school district No. 6 of Thurston county, one of the relators, had contracted an indebtedness of $1,365.26, and had issued warrants evidencing the indebtedness, of which the State Bank of Pender, also a relator, had become the owner by purchase. No question is raised in the pleadings of the good faith of either the issuance of the warrants by the school district or their acquisition by the bank, nor is their validity attacked. The school district was unable to pay the amount due the bank upon the warrants, and, as a result of negotiations between its officers and the bank, it was agreed that the school district would issue its bonds in the sum of $1,250, which the bank would receive in full of the indebtedness. The bonds were issued and the warrants held by the bank were surrendered and canceled. The bonds were presented to Hon. Eugene Moore, auditor of public accounts, respondent herein, for registration, and, upon his refusal to register them, this action was brought in this court, the relief sought being to compel the auditor to comply with the relator's demand for registration of the bonds. The auditor demurred to the petition or application of relators and thus put in issue the authority of the school district to issue the bonds and the right of the parties to require them to be registered.

The law to which our attention is directed, and pursuant to the provisions of which the relators assert they acted in making the agreement, and which, it is claimed, empowered the school district to issue the bonds for the purpose and in the manner it did, was passed during the legislative session of 1887 (see Session Laws, 1887, p. 100, ch. 9), and reads, in the portion which we need notice, as follows:

"An act to authorize counties, precincts, townships, or towns, cities, villages and school districts to compromise their indebtedness and issue new bonds therefor. * * *

"Section 1. That any county, precinct, township or town, city, village, or school district is hereby authorized and empowered to compromise its indebtedness in the manner hereinafter provided.

"Sec. 2. Whenever the county commissioners of any county, the city council of any city, the board of trustees of any village, or the school board of any school district shall be satisfied by petitions or otherwise that any such county, precinct, township, or town, city, village, or school district, is unable to pay in full its indebtedness, and two-thirds ($\frac{2}{3}$) of the resident taxpayers of such county, precinct, township, or town, city, village, or school district shall by petition ask that such county, precinct, township, town, city, or village, or school district to compromise such indebtedness, they are hereby empowered to enter into negotiation with the holder or holders of any such indebtedness of whatever form, scaling, discounting, or compromising the same.

"Sec. 3. Whenever satisfactory arrangements are made with the holder or holders or any of them of any such indebtedness, and upon a surrender of the same for cancellation or satisfaction, the county commissioners for and on behalf of any such county, precincts, townships, or towns, or the city council of any such city, or the board of trustees of any such village, or school board of any such school districts, shall upon petition of two-thirds ($\frac{2}{3}$) of the resident tax payers of such county, precinct, township, or town, city, village, or school district, shall have authority and they are hereby empowered to issue the bonds of such county, precinct, township, or town, city, village, or school district, to the holder or holders of the indebtedness so surrendered, canceled, or satisfied for the amount agreed upon, not exceeding the original indebtedness.

"Sec. 4. Before issuing bonds under the provisions of this act the board issuing the same shall by resolution enter upon its records, recite the number and denomination of the bonds to be issued, the rate of interest, and to whom and when payable. Such bonds shall be payable in not more than twenty (20) years from the date of their issue, or at any time before maturity at the option of such municipality. They shall bear interest at a rate not exceeding seven (7) per cent, nor the rate borne by the bonds surrendered, with interest coupons attached, payable annually or semi-annually," etc.

During a number of years school districts in this state issued bonds for certain purposes, by virtue of the right given them by law to borrow money, this court holding, when the question was presented to it for determination, that the power to issue bonds was implied from the authority conferred by statute to "borrow money." (*State v. School District*, 13 Neb., 78; also *State v. School District*, 13 Neb., 82.) There was some legislation on the subject of school district bonds, their issuance, registration, etc., during the legislative session of 1875 (Session Laws, 1875, pp. 118, 185), and in 1879 an act was passed by the legislature entitled "An act to provide for the issuing and payment of school district bonds," which repealed the former acts on the subject and provided for the issuance of bonds to obtain money, by the officers of school districts, for the purpose of purchasing a site for, and the erection thereon of, school houses and furnishing the same; that prior to the issuing of any bonds the subject of the bonding of the district must be submitted to the voters; and two-thirds of the qualified electors of the school district declare by their votes in favor of issuing the bonds; that a notice of such election be given at least twenty days prior to the day of the election; that no such vote be ordered unless pursuant to the request of a petition signed by at least one-third of the electors of the school district, presented to the district

State v. Moore.

board, suggesting that a vote be taken in relation to the
issuance of bonds for the purposes specified in the petition
and within the purposes stated in the act.   This law of
1879 has been amended, but not so as to change its require-
ments in regard to presentment of a petition and the hold-
ing of an election being necessary to the authorization of
an issue of bonds.   There was also passed by the legis-
lature of 1879 (Session Laws, 1879, p. 176) "An act to
provide for the funding of outstanding school district
bonds," which provided that any school district in the state
of Nebraska which has heretofore voted and issued bonds
which remain unpaid is authorized to issue bonds to be
substituted and exchanged for the original bonds, at a rate
not to exceed dollar for dollar, and further providing that
no vote of the people be required to authorize the issue of
the new bonds.   This act was amended in 1893, but the
amendment need not be further noticed here.   In 1887
came the act under which the bonds over which this con-
troversy has arisen were issued, and which we have herein-
before quoted.   We have shown the condition of our law
in reference to the subject under consideration to the extent
it appears in the foregoing statement, for the purpose, in
the main, of establishing, as it does, that prior to the pas-
sage of the act of 1887 the power of the school district
board to issue bonds was confined to instances where the
legislature had authorized them to do so only when the
proposition had first been submitted to and acted upon
favorably by the body of the district, the voters, for at no
time were the officers empowered to issue  bonds except
when the expenditure had the approval of the electors of
the district, save in the funding act of 1879, and this only
extended to bonds which had been previously voted and
issued, the indebtedness evidenced by them having received
the consideration and, by their votes, the approval of the
electors of the district.

It is not contended by the relators that the bonds which

the auditor refused to register were issued pursuant to any election at which the proposition of their issuance was voted upon by the electors of the school district relator, but that they were executed and delivered strictly in accordance with the requirements of the act of 1887, and it is not controverted by respondent that the provisions of the law of 1887 were in every essential fulfilled by the district officers in the issuance of these bonds; hence, the main question for our determination is, are the provisions of the act of 1887 sufficiently broad to authorize the issuance of bonds by a school district to substitute or exchange for an indebtedness of the district other than a bonded indebtedness? The other points noticed are only incidental to this, and important alone insomuch as they bear upon and affect its disposition. In the interpretation and construction of statutes one of the cardinal rules is that it is the intent of the law that is to be sought after, and, if possible, ascertained, and where the law is expressed in words which are clear and not ambiguous, and no doubt as to its purpose and meaning can arise from the language employed where to understand and know its intent it is but necessary to read, then there is no call for an interpretation, but where the intention and meaning of the law-makers as expressed in the statute enacted is uncertain or obscure, as in the one now under consideration, a bare reading will not suffice, and we are obliged to resort to a construction of its terms and provisions. This statute contemplates the issue of bonds by officers of certain governmental divisions and subdivisions of our state and necessarily carrying with it a resort to the power of taxation of the people to raise the funds to meet the indebtedness created by such action, in the majority of instances not accorded until the proposition involved is submitted to and approved by a vote of the electors of the particular political body or subdivisions whose tax bearers are to be affected thereby, and hence, agreeably to a well established rule, is to be strictly con-

strued, and where there is any doubt it must be resolved in favor of the public or taxpayers.

The first section of the act under discussion enumerates the particular bodies or municipalities to which power is granted, and contains the authorization to compromise indebtedness without designation of any particular kind of indebtedness. Section 2 provides for the presentation of a petition by two-thirds of the resident taxpayers of the county, city, town, or school district, etc., asking that such a compromise be made, and empowers the proper officers to negotiate with the holders of "any such indebtedness of whatever form, scaling, discounting, or compromising the same." The words "of whatever form," applied in explanation of the indebtedness and making it include, as given their natural and ordinary purport they do, any and all indebtedness, seem to make the intention in relation to what claims were in contemplation and referred to by the legislature passing the act, plain and certain, and if there were no statements in other portions of the law bearing upon this same point, we might well stop here, content with the determination to which it would lead us. Section 3. of the law authorizes the issuance of the bonds upon the surrender and cancellation or satisfaction of the indebtedness and presentment of a petition by two-thirds of the taxpayers requesting such action. It does not designate or indicate any particular kind of indebtedness, but refers to it in each instance by the use of the general term. In section 4, in referring to the bonds to be issued, it is stated: "They shall bear interest at a rate not exceeding seven (7) per cent, nor the rate borne by the bond surrendered;" thus, it would seem, clearly indicating that it was an indebtedness evidenced by bonds which the legislator had in mind when he framed and introduced the bill containing the act in question, and in contemplation of the legislative body when it passed the act. From a study of the body of the law we think it must be concluded that there is a doubt whether

the compromise of all kinds of indebtedness is intended to be authorized, or only those of a bonded nature. It is a well settled rule that if the meaning conveyed by the body of the act is uncertain or in doubt, resort may be had to the title, and more especially is this the rule in jurisdictions where, as in our state, there is a constitutional provision requiring the subject of every bill to be clearly expressed in its title. In the title of this act the subject was stated as follows: "An act to authorize counties, precincts, townships, or towns, cities, villages, and school districts to compromise their indebtedness and issue new bonds therefor." The portion which we desire mainly to notice is contained in the words, "and issue new bonds therefor," and more particularly to the two words, "new bonds." The principal object of the title of a bill is to convey to a person who reads it a general idea or knowledge of the contents of the act. To a person reading the title of this bill, the use of the word "new" in connection with word "bonds," and allowing to them their ordinary signification, as must be done, and referring back and viewing them, coupled with the other idea expressed in the title, *i. e.,* the compromise of the existing indebtedness, it seems clear that the natural thought would be bonds "new" for bonds "old," given the appellation "new" in the title because issued in place or renewal of bonds which would be designated by the opposing word "old." We then have the use in both title and act, of the general term indebtedness, which, without anything to extend or explain it, would include all kinds of indebtedness. In one section it is stated to be intended to cover indebtedness of whatever form, which would include the warrants or school orders held by the bank, and surrendered on the issuance of the bonds presented and which the auditor refused to register. On the other hand, we have the title stating that the act is to provide for new bonds which conveys the idea of compromising, replacing, or renewing other or old bonds, a statement in the

text that the bonds issued shall not bear interest at a rate in excess of that borne by the bonds surrendered, which, to say the least, leaves us in doubt and renders it uncertain whether the law was intended by the legislature to empower the issuance of bonds in the manner stated therein for the compromise of an existing indebtedness other than in the form of bonds. Add to these the thought that there was no provision for submitting the proposition of the issuance of these bonds to a vote, it being the wise and wholesome general policy of our law to so submit such questions, involving, as they necessarily do, the levying of a tax, to the decision of the voters who must pay the tax, and further that such laws are the subject for strict interpretation, and if there is a doubt as to the intention, it must be resolved in favor of the taxpayers or public, and we are constrained to say that our conclusion is that the act we are considering did not empower the issuance of the bonds to replace the indebtedness consisting, as it did, of school warrants or orders, and the writ prayed for in this action must be denied.

WRIT DENIED.