STATE OF NEBRASKA, EX REL. DOUGLAS COUNTY, V. J. F. CORNELL, AUDITOR OF PUBLIC ACCOUNTS.

FILED MARCH 3, 1898. No. 9811.

1. **Statutes: CONSTRUCTION.** Special provisions in a statute in regard to a particular subject control general provisions.

2. **Election to Vote County Bonds: RESULT.** Under section 134, article 1, chapter 18, Compiled Statutes 1897, a majority of all the votes cast at the election is sufficient for the adoption of a proposition to issue county funding bonds, where, by their issuance, the amount of the county indebtedness is not increased, and the rate of interest is reduced.

3. **Statutes: TITLES: AMENDMENTS.** Where the title to a bill is to amend a designated section of a law, no amendment is permissible which is not germane to the particular original section proposed to be changed. *State v. Tibbets*, 52 Neb. 228, followed.

4. ———: ———: ———. The amendment to section 134, article 1, chapter 18, Compiled Statutes, made by the legislature of 1883 (Session Laws 1883, p. 191) is germane to the original section, and fairly within the scope of the title of the amendatory act.

ORIGINAL application for mandamus to compel respondent to register funding bonds of Douglas county. *Writ allowed.*

*William D. Beckett*, for relator.

*C. J. Smyth, Attorney General*, and *Ed P. Smith, Deputy Attorney General*, contra.

NORVAL, J.

The purpose of this proceeding is to compel the respondent, as auditor of public accounts, to register and certify to the legality of 180 funding bonds of Douglas county of $1,000 each. It is disclosed that the proposition to issue these bonds, for the purpose of funding the outstanding indebtedness of the county, was submitted to the electors thereof at the general election held on November 2, 1897; that the total vote cast at said election was 18,762, of which 12,061 votes were in favor of

the proposition, and against it 3,749 votes; that the valid outstanding indebtedness of the county proposed to be funded by the issuance of said bonds was drawing interest at the rate of seven per cent per annum, and that the bonds in question bear four and one-half per cent interest per annum, and their issuance does not increase the amount of indebtedness of the county. The respondent has refused to register or to certify as to said bonds for the reason he is in doubt whether section 30, or section 134 of article 1, chapter 18, Compiled Statutes, determines the number of votes necessary to authorize the issuance of funding bonds. The proposition for funding the indebtedness of the county did not receive two-thirds of all the votes cast at the election; hence, if said section 30 applies, the bonds failed to receive a sufficient vote in their favor. On the other hand, if said section 134 governs and controls this case, it is conceded the bonds were legally carried, and are entitled to registration as valid obligations of the county, inasmuch as the bond proposition received a majority of all the votes cast at the election.

Said section 30, requiring two-thirds of all the votes cast at an election to adopt a proposition submitted to a vote of the people of a county involving the issuance of bonds is a general provision, and applicable to all kinds of bonds, where there is no special law upon the subject. It is plain that sections 132 to 136, inclusive, of said article 1, chapter 18, Compiled Statutes, in express terms relate exclusively to the subject of funding county indebtedness, and to the issuance of bonds for that purpose. Section 134 provides, *inter alia*, "That where, by the issuance of the proposed bonds, the rate of interest on said indebtedness will be reduced, and the amount of the indebtedness will not be increased, a majority of the votes cast shall be sufficient to adopt the proposition." The foregoing is a specific provision relating solely to a particular subject, namely, the issuing of bonds for the purpose of funding county indebtedness,

and is applicable in all cases where such bonds diminish
the rate of interest on the indebtedness, and the amount
of the indebtedness is not thereby increased. It is a
firmly established rule of construction in this state that
special provisions in a statute in regard to a particular
subject, control general provisions. This principle was
determined in *State v. Cornell*, 53 Neb. 556, where the
authorities upon the question are collated.

After the submission of the cause, and the foregoing
portion of this opinion had been prepared, a reargument
was ordered by the court, on its own motion, upon the
proposition whether the proviso clause of said section
134, already quoted, is inimical to that part of section
11, article 3, of the constitution, which provides that "no
bill shall contain more than one subject, and the same
shall be clearly expressed in its title." Counsel for re-
lator, in compliance with the suggestion of the court,
has filed a brief in support of the validity of the law,
which he has supplemented with an able oral argument
at the bar. Consideration will now be given to the con-
stitutional question already mentioned.

The legislature of 1879 passed a law entitled "An act
concerning counties and county officers" (Session Laws
1879, p. 353), which has been carried into the various
editions of the Compiled Statutes as article 1 of chapter
18. Sections 132 and 134 of said act are in the language
following:

"Sec. 132. The county board of any county in the state
of Nebraska are hereby authorized and empowered to
issue coupon bonds of such denominations as they may
deem best, sufficient to pay the outstanding and unpaid
warrants and indebtedness of such county; *Provided*,
That the county board of any such county may limit the
provisions of this sub-division to any fund or funds of
said county; *Provided, further*, That in no event shall
bonds be issued to a greater amount than ten per cent of
the assessed valuation of such county; *And provided
further*, That the county board shall first submit the ques-

tion of issuing said bonds to a vote of the qualified electors of such county.

"Sec. 134. It shall be the duty of the county board of any county issuing bonds under the provisions of this subdivision to ascertain the highest price at which said bonds can be negotiated, and to embrace in the proposition submitted to the qualified electors under this act the minimum price at which said bonds shall be sold; *Provided,* That no bonds issued under the provisions of this subdivision shall be sold for less than eighty-five per cent of their par value."

In 1883 the legislature amended both of said sections, and others, under the title "An act to amend sections 132, 134, 135, 136, and 137 of chapter 18 of the Compiled Statutes, entitled 'Counties and County Officers.'" (Session Laws 1883, p. 191.) The proviso clause of the original section 134 was so amended as to prohibit the sale by county boards of funding bonds at a sum less than their par value, and a second proviso was at the same time added to said section, the one involved herein and already set out, which we again quote: "*And provided further,* That where, by the issuance of the proposed bonds, the rate of interest on said indebtedness will be reduced, and the amount of the indebtedness will not be increased, a majority of the votes cast shall be sufficient to adopt the proposition." That the provision of section 11, article 3, of the constitution of this state requires that the title to an act must fairly express the subject of legislation, is so well established by the decisions of this court as to make a discussion of the subject at this time wholly unnecessary. If the subject-matter of a law is not embraced within the scope of the title adopted by the legislature, the constitutional requirement is violated, and the legislation cannot be upheld. This doctrine is applicable alike to original legislation and amendatory statutes, so that where a title to a bill is to amend an existing section of an act, no amendment can be made which is not germane to such original section.

The decisions of this and other courts so holding were reviewed at length in the opinion in *State v. Tibbets*, 52 Neb. 228. The doctrine stated is not assailed by counsel for relator, but he argues that the amendment to said section 134, made in 1883, is germane to the original section. The writer entertains no doubt that said amendment was entirely germane to said section 132 above set out, and could have been properly attached to said section as an amendment, since that section originally treated of the subject of issuing county funding bonds and expressly provided that the proposition to issue such bonds should be first submitted to the qualified voters of the county for their adoption or rejection. It requires no argument to demonstrate that any legislation fixing the vote essential to authorize the issuance of such bonds, with propriety, could have been engrafted on to said original section 132, by way of an amendment. The question, however, with which we are concerned is not whether the legislature selected the most appropriate section to which to attach the amendment in question, but whether the new legislation was cognate to the subject embraced in said original section 134. An examination of said section discloses that in express terms it required county boards desiring to issue such bonds to ascertain the highest prices at which said bonds can be negotiated, and to embrace in the proposition submitted to the electors the minimum sum at which said bonds should be sold, which provision indicates that, to some extent, section 134, as it originally stood, related to the subject of submitting the proposition to issue county funding bonds to a vote of the electors and the manner of such submission. My associates are of the opinion that the addition of a provision to said section designating the affirmative vote required to authorize the issuance of such bonds, where the indebtedness is not increased by the issuance, and the rate of interest is thereby diminished, is germane to the original subject of legislation, and therefore is not inhibited by section 11, article 3, of the constitution.

To this conclusion the writer, with some misgivings as to its soundness, yields assent, on the ground that a statute will not be declared invalid unless it clearly contravenes the fundamental law. No valid objection to the registration of these bonds having been given by the respondent, a peremptory writ will issue in accordance with the prayer of the petition.

WRIT ALLOWED.