GILBERT B. LANG ET AL., APPELLANTS, V. SANITARY DISTRICT OF NORFOLK, MADISON COUNTY, NEBRASKA, ET AL., APPELLEES.

71 N. W. 2d 608

Filed July 8, 1955. No. 33768.

*Ernest L. Reeker* and *Emory P. Burnett,* for appellants.

*Hutton & Hutton,* for appellees.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ., and KOKJER, District Judge.

CHAPPELL, J.

Plaintiffs, Gilbert B. Lang, Earl W. Shipley, and Edward W. Barr, who are residents, owners of property, and taxpayers within defendant Sanitary District of Norfolk, brought this action against such defendant and its three named trustees, seeking to enjoin the issuance of $38,000 of bonds by them "for the purpose of paying for improving the channel of the North Fork of the Elkhorn River (also called the Norfolk River) * * *." After trial on the merits, a judgment was rendered,

finding and adjudging the issues generally in favor of defendants and dismissing plaintiffs' action at plaintiffs' costs. Plaintiffs' motion for new trial was overruled, and they appealed, assigning that the trial court erred in so finding and adjudging the issues. We sustain the assignment.

The facts are not in dispute, having all been stipulated by the parties. Summarized, they are as follows: The three individually named defendants constitute the entire board of directors of defendant district. On October 16, 1952, an election was held in the district for the purpose of voting on a proposed bond issue not exceeding $50,000 for the purpose aforesaid. The calling and holding of the election and the counting, canvassing, declaring, and publishing of its results were all according to law. At the election 63.163 percent of all electors voting on the proposition voted in favor thereof. It was stipulated that unless restrained defendant district will, through its trustees, issue $38,000 of bonds, which will create a liability against such district and it will cause to be levied and collected annually a tax by valuation of all taxable property in the district sufficient in rate and amount to pay the interest and principal of the bonds as they become due. It was agreed that the only issue presented in deciding whether said bonds could be lawfully issued and sold is whether or not the percent of electors voting for the purpose was sufficient to meet applicable statutory requirements. In other words, is a favorable vote of 63.163 percent of the electors voting on such a proposed bond issue by such a sanitary district sufficient to lawfully authorize issue and sale of the bonds? We conclude that it is not.

Defendant district was organized under the provisions of Chapter 31, article 5, R. R. S. 1943, which was originally enacted by Laws 1891, c. 36, p. 287, entitled: "AN ACT to provide for the organization of sanitary districts, and to define their powers." Its constitutionality was affirmed in Whedon v. Wells, 95 Neb. 517, 145 N.

W., 1007. In that opinion it was said: "In Neal v. Vansickle, 72 Neb. 105, it was held that the legislature may provide for the creation of drainage or reclamation of large swamp, or overflowed, or submerged lands by the creation of local administrative organizations or political corporations. To the same effect is Campbell v. Youngson, 80 Neb. 322, State v. Hanson, 80 Neb. 724."

In that connection, section 31-510, R. R. S. 1943, permits sanitary districts to borrow money for corporate purposes and issue bonds therefor at not more than 6 percent interest, but provides that they "shall not become indebted in any manner or for any purpose to an amount in the aggregate in excess of four per cent of the assessed valuation of property in the district for county purposes." Also, section 31-511, R. R. S. 1943, provides: "At the time of or before incurring any bonded indebtedness the question shall be submitted to the people in the manner provided by law in cases of borrowing money for internal improvements." In case any sanitary district should be discontinued, section 31-541, R. R. S. 1943, provides in part: "The county board of the county within which such district is located * * * shall discharge the duties *within the territorial limits of such district imposed by law upon the district.*" (Italics supplied.) However, contrary to defendants' contention, the very wording of such provision gives it no controlling significance in this case.

The manner of issuing bonds to aid in the construction of or improving of works of internal improvement is generally provided in Chapter 10, article 4, R. R. S. 1943. In that regard, sections 10-401 to 10-405, R. R. S. 1943, were originally enacted by Laws 1869, p. 92. Section 10-401, R. R. S. 1943, authorizes any "county or city * * * to issue bonds to aid in the construction of any railroad, or other work of internal improvement, to an amount to be determined by the county board of such county or the city council of such city, not exceeding ten per cent of the assessed valuation of all

taxable property in said county or city; Provided, the county board or city council shall first submit the question of the issuing of such bonds to a vote of the legal voters of said county or city, *in the manner provided by law, for submitting to the people of a county the question of borrowing money.*" (Italics supplied.) Such proviso doubtless refers to sections 23-126 to 23-129, R. R. S. 1943, a general law which requires, with one exception unimportant here, that two-thirds of the total number of votes cast upon the proposition shall be in favor thereof. However, comparable with the situation in State ex rel. Polk County v. Marsh, 106 Neb. 760, 184 N. W. 901, section 10-404, R. R. S. 1943, contains a special controlling provision that: "Upon sixty per cent of the votes cast being in favor of the proposition submitted, the county board, in the case of a county, and the city council, in the case of a city, shall cause the proposition and the result of the vote to be entered upon the records of said county or city, and a notice of its adoption to be published for two successive weeks in any newspaper in said county or city, if there be one, and if not, then without such publication; *and shall thereupon issue said bonds, which shall be and continue a subsisting debt against such county or city* until they are paid and discharged; * * *." (Italics supplied.)

Section 10-405, R. R. S. 1943, then provides that: "It shall be the duty of the proper officers of such county or city to cause to be annually levied, collected and paid to the holders of such bonds a special tax on all taxable property within said county or city sufficient to pay the annual interest as the same becomes due. When the principal of said bonds becomes due such officers shall in like manner levy and collect an additional amount sufficient to pay the same as it becomes due; * * *."

Laws 1869, § 4, p. 92 (now section 10-404, R. R. S. 1943), originally authorized the issuance of such bonds upon a majority vote. Laws 1875, p. 87, by amend-

ment, increased it to require a two-thirds majority vote. However, in Report of Attorney General, Nebraska, 1905-1906, p. 73, it was held that such an amendment was void for want of a repealing clause, and noted that the editor of the Compiled Statutes for 1905 had for such reason omitted the act of 1875. Nevertheless, Cobbey's Annotated Statutes of Nebraska, 1911, included the 1875 act as section 11247, and annotated the opinion of the Attorney General aforesaid, together with an opinion appearing in Report of Attorney General, Nebraska, 1909-1910, p. 292, citing Reineman v. Covington; Columbus & Black Hills R. R. Co., 7 Neb. 310, and Wilbur v. Wyatt, 63 Neb. 261, 88 N. W. 499, holding that, as provided in the 1875 act, a two-thirds majority vote was required. However that may be, the Revised Statutes of Nebraska, 1913, section 408, restored the provision requiring a majority vote. It was so carried in Compiled Statutes of Nebraska, 1922, as section 325, p. 216. Thereafter, Laws 1923, c. 69, § 1, p. 206, amended that section to require a 60 percent majority vote. That provision now appears in section 10-404, R. R. S. 1943. It will be noted that in all respects the section is a general act specifically limited to counties and cities. A sanitary district is in law and fact neither a county nor a city. Sanitary districts have never been mentioned in and never have been legislatively included as such in sections 10-401 to 10-405, R. R. S. 1943. Further, the authority to organize such districts was enacted as early as 1891, some 22 years after the enactment of Laws 1869, p. 92, and during the period between 1875 and 1913, when a two-thirds majority vote was continually required.

Section 10-409, R. R. S. 1943, originally enacted by Laws 1885, c. 58, § 1, p. 268, now authorizes "Any precinct, township, city of the second class, or village, organized according to law * * * to issue bonds in aid of works of internal improvements, such as improving streets in cities of the second class and villages, high-

ways, bridges, courthouses, jails, municipal libraries, city and town halls, high schools, county high schools, school dormitories, and the drainage of swamp and wet lands, within such municipal divisions, and for the construction or purchase of a telephone system for use of the inhabitants thereof, * * * in the manner hereinafter directed, namely:

"(1) A petition signed by not less than fifty freeholders of the precinct, township, city of the second class, or village, shall be presented to the county board, city council of cities of the second class, board of trustees of villages, or the board authorized by law to conduct the business of such precinct, township, city of the second class, or village." The petition was required to set forth the nature of the work, amount of the proposed bonds, rate of interest not to exceed 6 percent, and length of time the bonds are to run, in no event less than 5 nor more than 20 years. The petitioners were required to give bond, to be approved by the county board, city council of cities of the second class, or board of trustees of villages, for payment of the expenses of the election should the proposition fail to receive 60 percent of the votes cast. Subsection (2) provided that upon receipt of the petition, the county board, city council of cities of the second class, or board of trustees of villages, shall give notice and call an election in the precinct, township, city of the second class, or village, as the case may be. *"Said notice, call and election shall be governed by the laws regulating the election for voting bonds for a county;* Provided, that when a proposition is submitted for the issuance of bonds for the acquisition of a site or the construction of a single building for the purpose of housing the municipal public library, or to be used as a city hall, auditorium, or community house in cities of the second class * * * sixty per cent of the votes cast shall be in favor of such proposition." (Italics supplied.)

It will be noted that section 10-409, R. R. S. 1943,

under which defendant district concededly proceeded, appears to be a catch-all, generally including authority for minor political subdivisions to issue bonds in aid of works of internal improvements such as improving designated classifications thereof. In that connection, such section was amended by Laws 1899, c. 49, § 1, p. 261; Laws 1907, c. 76, § 1, p. 286; Laws 1921, c. 58, § 1, p. 241; Laws 1931, c. 23, § 1, p. 96; Laws 1939, c. 5, § 1, p. 64; Laws 1947, c. 15, § 6, p. 81; and Laws 1953, c. 287, § 1, p. 925, which generally added thereto other described minor political subdivisions and described classifications of authority conferred upon them, some of which were by special provision therein designated as exceptions requiring only 60 percent majority. Sanitary districts were not specifically mentioned in any of such acts.

However, in speaking of the election, all of such acts provided that: "Said notice, call and election shall be governed by the laws regulating the election for voting bonds for a county." Further, section 10-401, R. R. S. 1943, provides that the election shall be held "in the manner provided by law, for submitting to the people of a county the question of borrowing money." See, sections 23-126, 23-127, 23-128, and 23-129, R. R. S. 1943, originally enacted by Laws 1879, §§ 27 to 30, pp. 363, 364, which has always required a two-thirds majority vote. Such provisions are general and applicable to all such bonds when there is no controlling special provision. State v. Cornell, 54 Neb. 72, 74 N. W. 432. Further, relevant section 10-410, R. R. S. 1943, originally enacted by Laws 1885, c. 58, § 2, p. 269, and amended by Laws 1899, c. 49, § 2, p. 262, and Laws 1917, c. 8, § 1, p. 62, always has, except as specifically provided by section 10-409, R. R. S. 1943, required a two-thirds majority vote to give validity to such bonds. Thus it will be noted that when sanitary districts were authorized to be organized in 1891, what are now sections 10-404, 10-410, and 23-129, R. R. S. 1943, all required a two-thirds majority vote, and no legislative changes

have ever been made authorizing sanitary districts to issue bonds unless the proposition submitted has received a favorable majority of two-thirds of the votes cast.

Section 10-411, R. R. S. 1943, provides: "The county boards, city councils of cities of the second class, or boards of trustees of villages or the person charged with levying the taxes, shall each year until the bonds issued under the authority of section 10-409 be paid, levy upon the taxable property in the precinct, township, city of the second class or village, a tax sufficient to pay the interest and five per cent of the principal as a sinking fund; and at the tax levy preceding the maturity of any such bonds, levy an amount sufficient to pay the principal and interest due on said bonds."

Further, with section 10-401, R. R. S. 1943, specifically limited to counties and cities, and section 10-409, R. R. S. 1943, established as a catch-all, the Legislature in 1891 authorized the creation of sanitary districts and gave them the power to issue bonds, referring to earlier legislation for the specific requirements that must be met before the bonding power may be exercised. In doing so, the Legislature of 1891 must be presumed to have had full knowledge of the earlier legislation and intent of the different legislatures enacting it.

As held in Halligan v. Elander, 147 Neb. 709, 25 N. W. 2d 13: "When the Legislature subsequently enacts legislation making related preexisting laws applicable thereto 'as nearly as may be' it will be presumed that it did so with full knowledge of such preexisting legislation and the judicial decisions of this court construing and applying it." See, also, Chicago & N. W. Ry. Co. v. County Board of Dodge County, 148 Neb. 648, 28 N. W. 2d 396.

Thus, when it was provided in section 31-511, R. R. S. 1943, that "the question" shall be submitted to the people in the manner provided by law in cases of borrowing money for internal improvements, and it was

provided in section 10-401, R. R. S. 1943, that "the question" should be submitted "in the manner provided by law, for submitting to the people of a county the question of borrowing money" and it was provided in section 10-409, R. R. S. 1943, that "Said notice, call and election shall be governed by the laws regulating the election for voting bonds for a county" it must be presumed that the Legislature knew that there were two groups of laws dealing with the question and that with exceptions specifically made therein, sections 23-126 through 23-129, R. R. S. 1943, should be controlling.

Sanitary districts are political subdivisions oftentimes designated as municipal, public, or quasi-public corporations. In Nelson-Johnston & Doudna v. Metropolitan Utilities Dist., 137 Neb. 871, 291 N. W. 558, this court said: "A noted text-writer defines a municipal corporation as follows: 'We may, therefore, define a municipal corporation in its historical and strict sense to be the incorporation, by the authority of the government, of the inhabitants of a particular place or district, and authorizing them in their corporate capacity to exercise subordinate specified powers of legislation and regulation with respect to their local and internal concerns. This power of local government is the distinctive purpose and the distinguishing feature of a municipal corporation proper. The phrase "municipal corporation" is used with us in general in the strict and proper sense just mentioned; but sometimes it is used in a broader sense that includes also public or quasi corporations, the principal purpose of whose creation is as an instrumentality of the state, and not for the regulation of the local and special affairs of a compact community.' 1 Dillon, Municipal Corporations, 59. * * *

"The rule has long been established in this state that a municipal corporation 'possesses, and can exercise, the following powers, and no others: First, those granted in express words; second, those necessarily or

fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation — not simply convenient, but indispensable.' Christensen v. City of Fremont, 45 Neb. 160, 63 N. W. 364. See, also, Consumers Coal Co. v. City of Lincoln, 109 Neb. 51, 189 N. W. 643; Schroeder v. Zehrung, 108 Neb. 573, 188 N. W. 237."

Also, as held in County of Johnson v. Weber, *ante* p. 432, 70 N. W. 2d 440: "Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them. The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state."

As stated in 64 C. J. S., Municipal Corporations, § 1833, p. 325: "A municipal corporation may incur indebtedness or create obligations binding on it when and only when the power to do so is expressly conferred on it by constitution, statute, or charter, or is necessarily or reasonably implied from the powers expressly granted, or is essential to the objects for which the corporation was created." See, also, § 1869, p. 422, where it is said: "Municipal corporations have no inherent power to borrow money; when authorized by constitutional or statutory provisions to do so, a municipal corporation must comply with all the requirements of such provisions."

In Allen v. Tobin, 155 Neb. 212, 51 N. W. 2d 338, this court held: "In construing statutes, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent so deduced from the whole will prevail over that of a particular part considered separately.

"The fundamental principle of statutory construction is to ascertain the intent of the Legislature, and to dis-

cover that intent from the language of the act itself, and it is not the court's duty nor within its province to read a meaning into a statute that is not warranted by legislative language."

In Placek v. Edstrom, 148 Neb. 79, 26 N. W. 2d 489, 174 A. L. R. 856, we held: "In enacting a statute, the Legislature must be presumed to have had in mind all previous legislation upon the subject. In the construction of a statute courts must consider the pre-existing law and any other laws relating to the same subject." In the opinion we said: "It is fundamental in this jurisdiction that statutes relating to the same subject, although enacted at different times, are in pari materia and should be construed together." See, also, Enyeart v. City of Lincoln, 136 Neb. 146, 285 N. W. 314.

As stated in Brooks v. MacLean, 95 Neb. 16, 144 N. W. 1067: "This court in the past has, for the protection of the taxpayer, consistently and repeatedly stood upon and required the letter of the law in such proceedings to be strictly complied with." In Township of Midland v. County Board of Gage County, 37 Neb. 582, 56 N. W. 317, it is said: "The statute regulating the voting of bonds by townships, counties, cities, etc., to aid in the construction of works of internal improvement, should be strictly construed in favor of the electors." See, also, State ex rel. School Dist. v. Moore, 45 Neb. 12, 63 N. W. 130, wherein this court held: "Statutes which authorize the issuance of bonds by the minor political subdivisions of the state are subjects for strict construction when an interpretation is necessary, and where, from a careful study and analysis of the whole act and its several parts, the meaning and intent is doubtful, the doubt should be resolved in favor of the public or taxpayers."

In the light of such rules, if we assume for purpose of argument that a doubt exists as to whether or not the Legislature intended that sanitary districts should be

governed by the 60 per cent vote requirement of section 10-404, R. R. S. 1943, or the two-thirds vote requirement of sections 10-410 and 23-129, R. R. S. 1943, the latter sections must control. Therefore, we conclude that the favorable vote actually cast in the case at bar was insufficient to confer authority upon the district through its trustees to issue and sell the bonds involved.

For reasons heretofore stated, the judgment of the trial court should be and hereby is reversed, and the cause is remanded with directions to render judgment for plaintiffs as prayed by them. All costs are taxed to defendants.

REVERSED AND REMANDED WITH DIRECTIONS.