THE STATE OF NEBRASKA, EX REL. ANDREW E. HARVEY, V. JOEL A. PIPER.

1. **Constitutional Law**: SPECIAL LEGISLATION: ORGANIZATION OF COUNTIES. A special act of the legislature, which provides that certain territory, the boundaries of which are given, shall be designated Harlan county, appoints certain persons commissioners, and requires them within thirty days to call an election for the purpose of electing county officers and selecting a site for a county seat, is not in conflict with the constitution, which inhibits the conferring of corporate powers by special act.

2. **Registration of Voters.** The registration law is to be used as a shield and not as a sword; as a means to prevent illegal voting, and not to disfranchise the voters of a county or its subdivisions; therefore, where a statute limits the time for hold-

ing an election to a less number of days than is required for the registration of voters, and no registration is had, the votes cast at such election will not on that account be illegal.

3. **County Seat:** LOCATION: IRREGULARITIES IN ELECTION. At an election held in Harlan county on the 3d day of July, 1871, in pursuance of the statue, the place which received a majority of all the votes cast thereby became the county seat of that county; and the court will not in collateral proceeding, fourteen years afterwards, inquire into irregularities at such election where no direct proceedings have been had to set it aside, and the place thus designated has been in fact the county seat since the year 1876.

ORIGINAL application for mandamus.

*W. S. Morlan,* for relator.

*John Dawson* and *Lamb, Ricketts & Wilson,* for respondent.

MAXWELL, J.

This is an application for a mandamus to compel the defendant to hold his office on the S. W. $\frac{1}{4}$ of section 16, township 2, range 19 west, in Harlan county, which, it is claimed, is the county seat. It appears from the record that on the 3d day of June, 1871, a special act was passed by the legislature prescribing the boundaries and providing for the organization of Harlan county. Laws 1871, 192. The second section of the act is as follows: "That Thomas D. Murrin, James O. Phillips, and Mark Coad are hereby appointed commissioners, who shall, within thirty days from the passage and approval of this act, call an election of the qualified voters of said county. They shall give twenty days' notice of said election by posting notices in at least five of the most public places within said county. Said voters when so assembled shall proceed to the election of one county clerk, one probate judge, one county treasurer, one sheriff, one coroner, and three county commissioners. At the same time and place said voters shall desig-

nate upon their ballots the *place of their county seat*, and the place receiving a majority of all the votes cast shall be the county seat of said county of Harlan. Said election shall be conducted and the votes canvassed as at general elections."

The following notice was thereupon published in said county :

### " ELECTION NOTICE.

" In pursuance of an act of the legislature, passed and approved June 3d, 1871, creating and organizing the county of Harlan, an election will be held on the 3d day of July, 1871, for the purpose of electing one county clerk, one probate judge, one county treasurer, one sheriff, one coroner, and three county commissioners. At the same time and voting places, voters will designate on their ballots their choice of location for the county seat of Harlan county, Nebraska. The following places are designated as voting places: For those living on Prairie Dog creek, Ryder's house; for those living west of the east line of the county and west of Murrin's tent, at J. W. Foster's house; for those west of Murrin's to end of county, Mr. Squier's house.

'' (Signed.)                T. D. MURRIN,

" J. O. PHILLIPS,

"*Commissioners.*"

At the election held in pursuance of the notice, Alma City (Sec. 33, T. 2 N., R. 18 W.) received thirty-seven votes, and sections 23 and 26, T. 2, R. 19 W., received five votes. The returns are certified to by " Thos. D. Murrin and Mark Coad, county commissioners." The next year, acting Governor James issued a proclamation calling an election for the election of county officers and the selection of the county seat. Under this proclamation an election was held in said county in June, 1872, for the election of county officers and the location of the county seat. At this election, Alma received thirty-two votes, Republican City, fifty-seven votes, and the S. W. $\frac{1}{4}$ of Sec. 16, T. 2, R. 19 W., thirty-six votes for county seat. Another election was

called and held in August, 1872, at which, it is claimed, the S. W. $\frac{1}{2}$ of Sec. 16, T. 2, R. 19 W. had a majority of the votes cast. The record shows that, in consequence of the various elections, there was a great deal of contention and uncertainty as to what place was the county seat of that county; that in 1876, apparently by common consent, the records of the county were removed to Alma; and the county offices have been kept at that place from that time until the present.

The first question presented is, the validity of the election of July 3d, 1871. It is claimed:

*First,* That the act is unconstitutional, as it confers corporate powers by a special act. The practice in this state, both before and since the adoption of the constitution of 1875, has been for the legislature to create new counties by special acts; and from the nature of the case it is, to some extent at least, necessary to do so. We do not think that merely prescribing the boundaries of a county and providing the machinery by which it may be organized is within the prohibition of the constitution. Strictly speaking, it is not a conferring of corporate powers, but rather, providing the means by which they may be exercised. The corporate powers are conferred by the general law regulating counties, and not by the act prescribing their boundaries The first objection, therefore, is untenable.

*Second,* That two of the commissioners had no authority to call the election. In answer to this objection it is sufficient to call attention to the statute then in force. Sec. 7, Ch. 9 of the Revised Statutes of 1866, provides that "when only two of the commissioners of the board shall attend, and be divided on any question, they shall defer a decision until the next meeting of the board, and then the matter shall be decided by a majority of the board;" clearly implying that if there is no disagreement two may decide in the first instance; and such has been the constant practice in this state ever since the year 1856, when the commissioner act was

passed.   The special commissioners appointed for the pur-
pose of organizing a new county are governed as to their
duties, where there are no special provisions to the contrary,
by the general law relating to county commissioners. There
is nothing, therefore, in the second objection.

*Third,* That there was no registration of the voters.   It
will be observed that the act of June 3, 1871, required the
commissioners named to call an election within thirty days
from the date of the approval of the act, and to give *twenty
days'* notice by posting notices, etc., of the election.   At the
time of the passage of this act, Harlan county had no rail-
way communication, and it would  require several days for
a messenger to reach that point from  Lincoln by the most
direct and favored route.   As the registrars were required
to commence registering voters more than thirty days pre-
ceding an election, it is very evident that the registration
law did not apply to that election.   While the statute pro-
vided that the registration law should apply to all elec-
tions, yet the provision must be construed with reference
to the statute under which the election was held.   If the
statute requires the election to be held within a shorter
period than that provided for the registration of voters, the
presumption is that the registration law was not intended
to apply to that election, the provisions of the two acts
being inconsistent.   The registration law is to be used as
a shield, and not as a sword; as a protection against il-
legal votes, and not as a means of disfranchising the people
of a whole county, or any of its subdivisions.   The failure
in the registration of voters, therefore, did not render the
election invalid.

It is said, however, that the election was fraudulent, and
that nearly all the votes cast thereat were illegal.   These
assertions are made fourteen years after the election was
held, and it is impossible for us to determine in this col-
lateral proceeding their truth or falsity.   This much the
record discloses, of which there is no doubt: That an elec-

tion was held on the 3d day of July, 1871, for the location of the county seat; that thirty-seven votes were given for Alma, to five for other points. The presumption is, that these were legal votes. The relator's attorney does not contend that they were all illegal. He says the election was generally treated as void; but the fact that for nine years the county seat has practically been located at Alma would seem to refute that assertion.

It is desirable that controversies in regard to a county seat should be settled as speedily as possible. The tendency of such controversies is to create more or less bitterness between the friends of rival points, and not unfrequently retarding to some extent the prosperity of all.

The business of certain officers, too, must be transacted at the county seat; and where parties have tacitly acknowledged and recognized a certain point as the county seat, and without seeking to contest the matter or raise an issue on that point for years, until after a large amount of important business has been transacted, the validity of which would be, or rather might be, called in question if it was declared the county seat never was located there, should be estopped from questioning the validity of the location. A party must act with reasonable promptness in such cases, and the courts should refuse to enquire into or enforce stale claims. We therefore hold that the county seat of Harlan county is at Alma. The proclamation of 1872, of acting Governor James, was unauthorized and of no validity, and the elections held thereunder void. It follows that the writ must be denied and the application dismissed.

JUDGMENT ACCORDINGLY.

REESE, J., concurs.

COBB, CH. J., dissents.