PETER MATTHEWS

*v.*

THE PEOPLE *ex rel.* A. J. Streeter.

</div>

<div align="right">159   399<br>85a   68</div>

<div align="center">*Filed at Ottawa January 20, 1896.*</div>

DRAM-SHOPS—*Dram-shop act construed as to residence of surety on bond.* A surety upon the bond of the keeper of a dram-shop is not required by section 5 of the Dram-shop act to be a *resident* of the county in which the municipality granting the license is located, but it is sufficient if he is a "freeholder" of that county.

*Matthews* v. *People ex rel.* 59 Ill. App. 146, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Mercer county; the Hon. JOHN J. GLENN, Judge, presiding.

PEPPER & SCOTT, for appellant:

The term "freeholder of the county" imports one owning a freehold in that county, and nothing more. Dram-shop act, sec. 5, chap. 43; *Simpson* v. *Coe,* 3 N. H. 85; *Rix* v. *Johnson,* 5 id. 520; *Damp* v. *Dane,* 29 Wis. 419.

The law relative to the liquor traffic, in force prior to the Dram-shop act of 1874, required but one qualification of sureties on the liquor retailer's bond, viz., that they should be sufficient.   Gross' Stat. 1869, chap. 64, sec. 9.

The power to regulate and restrict the liquor traffic is not exhausted by the Dram-shop act, but power to place further restrictions, limitations and regulations about it is conferred upon cities and villages.   Rev. Stat. chap. 24, sec. 46, par. 63 ; *Dennehy* v. *Chicago,* 120 Ill. 627.

The Dram-shop act is highly penal, and must therefore be strictly construed.   The finding against appellant rendered him liable, not only to ouster and the forfeiture of money paid for his license, but also to a severe pecuniary penalty.   Rev. Stat. chap. 112, sec. 6.

One who is within the letter of a statute cannot be deprived of its benefit on the ground that his case is not within its spirit.   Bishop on Stat. Crimes, sec. 220 ; Potter's Dwarris, (ed. of 1873,) 247.

We must not import into an act a condition or qualification we do not find there.   *Steere* v. *Brownell,* 124 Ill. 27.

J. M. BROCK, State's Attorney, and BASSETT & BASSETT, for appellee :

The words, "two good and sufficient sureties, freeholders of the county in which the license is to be granted," not only require the sureties to be possessed of a freehold estate in the county, but they require more.   The sureties must be "of the county,"—that is, residents.   *Price* v. *Price,* 10 Ohio St. 316 ; *Cushing* v. *Warrick,* 9 Gray, 382; *Hamilton* v. *Steamboat Hamilton,* 16 Ohio St. 432.

Every statute ought to be expounded, not according to the letter, but according to the meaning, by penetrating its soul and spirit, and thus revealing the intent and meaning of the legislature.   Potter's Dwarris, (ed. of 1875,) 174, 175 ; *United States* v. *Fisher,* 2 Crouch, 386 ; Sedgwick on Const. of Statutes, 193, 194, 198-203 ; *Formele* v. *Hall,* 4 Comst. 140; Sutherland on Statutory Const. secs. 234, 239, 242-244.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

This was an information in the nature of a *quo warranto*, brought in the circuit court of Mercer county, against Peter Matthews, to test his right to keep a dram-shop in the village of Windsor, in Mercer county, under a license issued by the corporate authorities of the village on the 17th day of May, 1893. The information contained three counts, which are substantially alike. The second, which perhaps contains a fuller statement than the others, is as follows: "That relator is resident and tax-payer in village of Windsor, Mercer county, Illinois ; that on May 17, 1893, the corporate authorities of said village granted to Peter Matthews a dram-shop license; that such license was granted by such authorities, and received and acted on by Matthews, without complying with statute in relation to filing bond; that a pretended bond is on file, signed by said Matthews as principal and by Sol Frohlich and Henry Gardt as sureties, but that both of said sureties are residents of Knox county and neither of them are freeholders in Mercer county, and that said license to retail intoxicating liquors within corporate limits of Windsor, granted to said Peter Matthews, was not legally issued because of want of a proper bond, and that said Peter Matthews, from May 17, 1893, has usurped, and still usurps, license to sell liquor in said village in less quantities than one gallon."

To the information the defendant filed two pleas. The first one is substantially as follows: That the president and board of trustees of the village of Windsor, in Mercer county, Illinois, under and by virtue of an ordinance of said village authorizing them so to do, on May 17, 1893, granted and caused to be issued to defendant a license to keep a dram-shop in said village ; that prior to the granting of such license defendant made written application therefor, paid into the hands of the village treasurer

money properly due therefor, at the rate of $500 per annum, in advance, executed and delivered to the president and board of trustees bond in the penal sum of $1000, conditioned and executed as required by the ordinances of said village, and filed with the clerk of said village a bond in the penal sum of $3000, payable to the People of the State of Illinois, conditioned as required by the statute in such case made and provided, and that both of said bonds were approved by said president and board of trustees prior to the granting of said license; that the last mentioned bond was executed by Sol Frohlich and Henry Gardt as sureties, who were, at the time of executing such bond, residents of Galesburg, Knox county, Illinois, and were both and each at the same time freeholders of the county of Mercer, in the State of Illinois; that such sureties were freeholders of said county of Mercer by reason that prior to the execution of said last mentioned bond one William T. Hammond, being the owner in fee simple of lot 1, in block 118, in the village of Windsor, in Mercer county, Illinois, sold and conveyed the same, by statutory quit-claim deed, to said Sol Frohlich and Henry Gardt, and delivered said deed to them prior to the execution of the last mentioned bond, whereby they became owners in fee simple of said lot and freeholders of said county of Mercer, and so continued and were at the time of the execution of the last mentioned bond, and so continue to this day, and defendant, under such license, from and after its issuance has lawfully exercised the rights and privileges of a licensed dram-shop keeper in said village. The second plea, in addition to the facts set up in the first, states that the sureties on the bond were, when it was executed, each in his own right, worth $10,000 in unencumbered property in the State of Illinois, over and above all debts, exemptions and liabilities.

To the pleas a general demurrer was interposed by the relator, which the court sustained, and the defendant

electing to abide by his pleas the court entered a judgment of ouster. That judgment was affirmed in the Appellate Court.

Section 5 of chapter 43, entitled "Dram-shops," provides: "No person shall be licensed to keep a dram-shop or to sell intoxicating liquors by any county board, or the authorities of any city, town or village, unless he shall first give bond in the penal sum of $3000, payable to the People of the State of Illinois, with at least two good and sufficient sureties, freeholders of the county in which the license is to be granted, to be approved by the officer who may be authorized to issue the license, conditioned that he will pay to all persons all damages that they may sustain, either in person or property or means of support, by reason of the person so obtaining a license selling or giving away intoxicating liquors. The officer taking such bond may examine any person offered as security upon any such bond, under oath, and require him to subscribe and swear to his statement in regard to his pecuniary ability to become such security. Any bond taken pursuant to this section may be sued upon for the use of any person, or his legal representatives, who may be injured by reason of the selling or giving away any intoxicating liquor by the person so licensed, or by his agent or servant."

The relator having demurred to defendant's pleas, the facts set up in the pleas, well pleaded, are admitted to be true. No question is made in regard to the fact that the village of Windsor passed an ordinance which authorized a license to keep a dram-shop; that the proper authorities accepted the amount required to be paid under the ordinance and issued a license to defendant to keep a dram-shop; that a bond in the penal sum of $1000, required by the ordinance, was duly executed, accepted and approved by the village authorities; that a bond conditioned as required by the statute, in the penal sum of $3000, was also filed with the clerk of the village and ap-

proved by the president and board of trustees before the license was issued. As respects these facts there is no controversy. But the bond last mentioned, payable to the People of the State of Illinois, in the penal sum of $3000, was executed by the defendant with Sol Frohlich and Henry Gardt as sureties, who reside in Knox county, and, as the sureties are not residents of Mercer county, it is contended that the village authorities had no right to accept and approve the bond, and hence the license was unauthorized, and conferred no right on the defendant to keep a dram-shop.

It will be observed that while the plea sets up that the sureties, Sol Frohlich and Henry Gardt, at the time of executing the bond were residents of Knox county, at the same time it also sets up the further fact that they were each freeholders of the county of Mercer, in the State of Illinois. This fact is admitted by the demurrer. If the sureties on the bond were freeholders of the county of Mercer, did the bond comply with the statute? Recurring to the statute, it declares: "No person shall be licensed to keep a dram-shop, * * * by the authorities of any city, town or village, unless he shall first give bond in the penal sum of $3000, * * * with at least two good and sufficient sureties, freeholders of the county in which the license is to be granted, to be approved by the officer who may be authorized to issue the license." The bond was in proper form and approved by the officer designated by law. It contained two sureties, as provided by statute, and they were freeholders of Mercer county. Here there was a literal compliance with the language of the statute. Was anything more required?

In the construction of a statute it is always important to ascertain the intent of the legislature and then carry out that intention. But the intention of the legislature is to be determined from the language used in the act, and where the words used are plain and easily understood, and there is no ambiguity, there is no room for

construction. (*United States* v. *Willberger*, 5 Wheat. 76.)
If the legislature, in the passage of the act, had intended
to require the sureties on the bond to be freeholders resid-
ing in the county, why did not that body say so? The
fact that no such language was used is the best evidence
that no intention of that character existed. The legisla-
ture, in the passage of the act requiring the two sureties
on the bond to be freeholders of the county, doubtless had
in view the importance of securing a bond that would be
abundantly good, and as a freeholder, as a general rule,
may be regarded safer and better security than a person
who owns nothing but personal property, it seems obvious
why that body required the sureties to be freeholders.
But the mere fact that a freeholder resides in an adjoin-
ing county from the village where the license is issued
affords no reason why he should be excluded and a free-
holder residing in the county accepted. Where a village
is located near the corner of two or three counties, no
reason is perceived why the public interest would not be
as well protected where the sureties on the bond reside
in an adjoining county as would be the case should they
all reside in the county where the license is issued. But
however that may be, it is enough that the statute here
involved does not, by a fair and reasonable construction,
require the sureties to reside in the same county where
the incorporated town or village granting the license is
located, and courts are powerless to add a requirement
not found in the statute.

In *Rix* v. *Johnson*, 5 N. H. 520, a question arose as to the
proper construction to be placed on the words "freehold-
ers of a county," and it was held that a freeholder of a
county implied nothing more than to be a freeholder of
real estate situated there. In the discussion of the ques-
tion the court, among other things, said: "And we have
no doubt that a man who owns real estate in a county
may, with strict propriety of language, be said to be a

freeholder of that county although he may not reside in it."

The judgment of the circuit and Appellate Courts will be reversed and the cause remanded, with direction to the circuit court to overrule the demurrer to the pleas.

*Reversed and remanded.*