JASON R. GEORGE ET AL. V. WILLIAM CLEVELAND.

FILED FEBRUARY 17, 1898.   No. 7775.

Village Bonds: INTERNAL IMPROVEMENTS: COMPLIANCE WITH CONTRACT:
   INJUNCTION. The electors of the village of Shelton, in Buffalo
   county, by a favorable vote on the proposition, authorized the
   issuance and delivery of the bonds of the village to two desig-
   nated persons on the construction and operation by said persons
   of a mill. The persons named did not build the mill but entered
   into a copartnership with two other parties under the name and
   style of the Shelton Milling & Grain Company, and the company
   built and operated the mill. *Held,* That the voters of the village
   could demand the strict or literal performance of the contract;
   and the erection and operation of the mill by the copartnership
   was not such a fulfillment of the compact and did not entitle
   either the company or the two persons named in the proposition
   approved by the voters at the election to demand and receive the
   bonds.

ERROR from the district court of Buffalo county.
Tried below before NEVILLE, J.   *Affirmed.*

*Marston & Nevius* and *John M. Thurston,* for plaintiffs in
error.

*Calkins & Pratt, contra.*

HARRISON, C. J.

This action was instituted by defendant in error for
himself and others similarly interested to restrain the
issuance and delivery of the bonds of the village of Shel-
ton, Nebraska, in the aggregate sum of $2,000, to Jason
George and Thomas Turney.   Pleadings were filed by the
parties, by which issues were joined, of which a trial re-
sulted in a decree by which the delivery of said bonds was
perpetually enjoined and restrained.   From such decree
the present appeal has been perfected.

It appears that George and Stevens submitted for the
consideration of the citizens of Shelton the following
proposition, the date *et cetera* are shown in copy:

"We, the undersigned, herewith submit the following

proposition to the citizens of the village of Shelton, in Buffalo county, Nebraska, to-wit: In consideration of the voting and delivery of bonds by the said village of Shelton, in the sum of $2,000, we hereby agree with the said citizens of Shelton to build and fully equip and operate for five years a flouring mill with roller process, to be run by water-power and to do custom work, and have a capacity of 75 barrels per day; said mill shall be 24 by 40 feet, three stories high exclusive of basement, with addition 16 by 40 feet, and to cost not less than $15,000.

"And we further agree to produce flour equal in quality and yield to any flouring mill in the state. When said mill is completed and successfully run three months to the satisfaction of a citizens' committee of said village of Shelton, the said bonds to be turned over and delivered to us.

"Dated at Shelton, Nebraska, this 10th day of June, 1893.                                    J. R. GEORGE.

"THOMAS TURNEY."

The authority for the issuance of any bonds of the character involved in this litigation, if it exists, is contained in the provisions of our statute in relation to issuance of bonds in aid of works of internal improvements. A petition was presented to the county board and, pursuant to the prayer thereof, an election called for the purpose of taking a vote of the citizens on the question of the issuance of the bonds and their donation to the parties who had made the offer, in accordance with the terms and on their compliance with the conditions and obligations by the offer placed on them. The published call and notices of the election, the holding of which was fixed and occurred of date July 18, 1893, contained the following as of the essential portions of the proposition submitted:

"Shall the village of Shelton and state of Nebraska issue the bonds of the village of Shelton to the amount of $2,000, payable to J. R. George and Thomas Turney, or bearer, on the expiration of ten years from the date of same, and bearing interest at the rate of six per cent per

annum, payable annually, with coupons attached to said
bonds payable to bearer at the office of the treasurer of
Buffalo county, Nebraska?   And shall the county board
cause to be levied annually upon the taxable property of
the village of Shelton, in addition to the regular taxes,
an amount of taxes sufficient to pay the annual interest
on said bonds to-wit, one hundred and twenty dollars,
and two hundred dollars each year for ten years to pay
the principal?   Said bonds to be held in trust by the
trustees of the said village of Shelton, to be turned over
to the said J. B. George and Thomas Turney when they
shall have erected in the said village of Shelton a flouring
mill, with roller process, to be run by water-power and
to do custom work, three stories high, exclusive of base-
ment, main part to be 24x40 feet with addition 16x40
feet with a capacity of seventy-five barrels per day, and
to cost not less than $15,000, provided that said bonds
shall not be so turned over by said trustees until said
mill has been fully equipped and successfully operated
for three (3) months."

The original petition presented (as is stated in short
in the brief filed for the defendant in error) the following
reasons why the bonds should not be delivered:

"1. That the notice of the election was not published
for four weeks as required by law.

"2. That no copy of the question submitted was posted
up at the place of voting during the election.

"3. That the petition for said election was not signed
by fifty freeholders.

"4. That no notice of the result of said election had
been published for two weeks or at all.

"5. That the mill for which said bonds were voted was
not a public mill within the provisions of section 27, chap-
ter 57, Compiled Statutes, and that it did not and could
not grind for toll as required by said chapter 57, Com-
piled Statutes, concerning public mills.

"6. That the donees had not complied with the terms
of the proposition, in that they had not built a mill cost-

ing fifteen thousand dollars, nor any greater sum than ten thousand dollars."

During the trial it appeared in evidence (it was of the testimony given by Mr. George, one of the plaintiffs in error) that about August 1, 1893, or subsequent to the election, the result of which was favorable to the issuance of the bonds, and prior to the erection of the mill, Jason R. George and Thomas Turney, with two other persons, formed a copartnership under the name and style of the "Shelton Milling & Grain Company," a one-third interest in the mill property being conveyed to the two parties who joined in the copartnership with Mr. George and Mr. Turney, and the company builded and owned the mill by reason of the construction of which George and Turney claimed the right to demand the delivery of the bonds to them.   Leave was then asked for defendant in error to file an amendment to the petition to conform to the facts as proved, and to which we have just referred.   This was granted, and the amendment was prepared and filed. The trial court embodied in its decree the following findings:

"1. That the petition presented to the county board for calling of the election mentioned in the petition herein was in all respects legal and sufficient.

"2. That the publication of the notice of said election was full, complete, and in accordance with law.

"3. That a copy of the proposition contained in said notice was duly posted at the polling place in the said village of Shelton on the day of said election, as required. by law.

"4. That the canvass of the return of said election was duly made by the proper officers, and report thereof made to the county board, and that said proposition was duly declared carried in accordance with law.

"5. The court doth further find that all the preliminary steps necessary to the validity of said bonds, if issued, were duly taken and had in accordance with the statute.

"6. That the said mill erected was an internal improve-

ment, and public mill under the statute, under and by virtue of which the said preliminary proceedings were taken and had; that said bonds were duly issued, registered, and placed in the hands of the trustees of said village of Shelton, under the terms of said proposition.

"7. The court doth further find that the evidence in this case shows that a proposition was made in writing by the defendants J. R. George and Thomas Turney to construct and operate a mill of certain dimensions, character, and capacity, described in said proposition, and to cost not less than $15,000, and that the schedule showing the items of cost of said mill, in evidence, shows that among said items was one of $7,000 for the plant, which consisted of a water privilege, right of flowage, race, and superstructure of an old grist mill occupying the present site of the mill tendered as being constructed in accordance with the terms of said proposition. That there was no proper evidence showing that the taxpayers of said village voted upon said proposition with the knowledge that said ·'old plant' was to be a part of the said sum of $15,000, which said proposed mill should cost, and the court therefore finds that by reason of the failure to embody the proposed use of said 'old plant' in the said proposition in writing was a failure to inform the legal voters of said village of the full terms and complete consideration offered for the issue of said bonds, and for that reason the delivery of said bonds should be restrained.

"8. The court further finds that after said election, and before the construction of said mill, the said Jason R. George and Thomas Turney, the beneficiaries named in said bonds, and about the first day of August, 1893, took into partnership with them two other persons and formed a copartnership under the name and style of the Shelton Milling and Grain Company, and conveyed to said two persons a one-third interest in said mill property, and that said copartnership constructed said mill. And the court finds that by such a proceeding the

real beneficiaries in said bonds, and the donees thereof, were changed and that said mill was not constructed by the said Jason R. George and Thomas Turney as required by the terms of said proposition and contract on the part of the taxpayers of said village, and for that reason the delivery of said bonds should be restrained."

From which will be gathered that finding numbered 8 is one which in and of itself furnishes sufficient basis and support for the decree rendered. There can be no doubt of the propriety of such an amendment of the petition as was asked or the right of the court to allow it, or that it was an entirely correct action in the present case. The citizens, the electors, having been informed by the offer as first made in the petition circulated and presented to the county board, in a call for notices of the election, and in the proposition submitted, in fact at every stage of the proceedings, that the mill would be erected and operated by Jason R. George and Thomas Turney, this being the consideration to be received by them and which they had stamped with their approval and sanctioned by their votes, were entitled not only to expect, but to demand that the conditions and terms of the compact, for such it was, be exactly fulfilled—be literally performed. The construction and operation of the mill by the Shelton Milling & Grain Company was not a literal compliance with the contract and did not confer upon it the right to demand and receive the bonds; nor did it place George and Turney in a position to entitle them to the bonds, nor to receive them in part for their own benefit and in part for the benefit of their partners; nor to demand and receive them in their names but in reality for the company.

In the case of *Township of Midland v. County Board of Gage County*, 37 Neb. 582, it was sought to restrain the issuance and delivery of certain bonds of the township. The issuance of the bonds to a designated railroad company in aid of the construction of its railroad had been authorized by a vote of the electors of the township.

50

The designated company did not complete the railroad, but sold and transferred all its rights and interests to another company, which completed the railroad and claimed the bonds. The trial court, by decree, perpetually enjoined the issuance of the bonds. On appeal to this court, in its opinion this court said: "The petition presented to the board of supervisors by the freeholders of the township prayed the calling therein of an election and the submission to the electors of a proposition to aid the railroad company. The proposition submitted to the electors was to aid the railroad company. The electors voted to aid the railroad company and authorized the board of supervisors, on the completion of the improvement by the railroad company, to issue the bonds of the township and deliver them to the railroad company. Yet this railroad company did not·complete the improvement. It sold out its property and franchises, and its vendee built the improvement and now claims the bonds. This will not do. If one vendee can claim this aid successfully, any vendee of the railroad company can. * * * The electors of the township are entitled to stand on the very letter of their promise. If they promised a donation to A if he would build a certain improvement, it does not follow that B is entitled to the donation, though he builds the improvement; in other words, the township electors designated the donee and only the one designated can take the donation. The electors did not authorize the supervisors to deliver the bonds voted to the railroad company or its vendee, and had they, it would have been ineffectual and the bond invalid. (*Jones v. Hurlburt*, 13 Neb. 125; *Spurck v. Lincoln & N. W. R. Co.*, 14 Neb. 293; *State v. Roggen*, 22 Neb. 118.) The most that can be said for the appellees is that the electors of this township authorized their agents, the board of supervisors and the county clerk of Gage county, to issue the bonds of said Midland township and deliver them to the railroad company when it had built a certain improvement. The railroad company never

complied with the condition coupled with the authority given by the township electors to its agents. The vendee of the railroad has complied with the condition to build the improvement, and it now claims these agents should deliver the bonds to it. Authority from a principal to an agent to do a specific act is limited to that act." (See also *State v. Commissioners of Nemaha County*, 10 Kan. 577.)

In the case of *Nash v. Baker*, 37 Neb. 713, in which the relief sought was to enjoin the collection of $75,000 of bonds which, by vote, the citizens of Kearney had donated in aid of the construction by the Kearney & Black Hills Railway Company of its railroad on the ground that it had been represented to the voters that the road when built would be and operate as an entirely independent line and not under the control of any other railroad or railway and that said statement was untrue, in the discussion of one of the questions presented this court states: "In the case under consideration the representation was of the existence of a fact of controlling weight with the electors called upon to vote bonds in aid of the enterprise projected. The voter could only know of the nature and object of the project to be assisted, by the representations of its promoters. These representations necessarily referred to future conditions, the power to establish which was lodged in the promoters of the scheme. The promise was, that the road, when built, should exist and operate in entire independence of the domination of another road already in existence. It might be that this independence was undesirable, useless, and worthless. That proposition, however, should have been argued to the voters. It cannot now be urged against them. In an opinion in this court, in *Township of Midland v. County Board of Gage County*, 37 Neb. 582, filed during the present term, it has been held that the electors of a township are entitled to stand upon the very letter of their promise, a wholesome rule which should be extended to the facts under consideration. In the

case at bar it may be that the insistence upon independence of the Union Pacific Railway was without reason, and even merely whimsical, yet it was a condition which the voters had a right to insist upon as qualifying their proposed donations. The propriety of employing the power of taxation to making donations to enterprises in no way connected with the administration of government may well be doubted in any case. Such restrictive conditions as the voters see fit to insist upon must not be ignored by the proposed donee, especially after accepting the donation burdened with them." A rehearing was moved for and granted, and in a second opinion, reported in 40 Neb. 294, it was said: "The argument upon the rehearing is largely directed to the proposition that the evidence failed to establish some elements necessary to sustain a claim for relief on the ground of false representations. We think that each one of these elements is fairly established by the proof in the case, but if the case depended upon other principles the result would be the same. It is an incontrovertible fact that the contract of the voters, in view of the representations made and assurances held out, was for a railroad independent of other lines and not subject to the control of any other road. What they obtained was in fact a railroad practically owned and absolutely controlled by the Union Pacific Railroad Company, and bound to it by a close traffic agreement. Commenting upon certain language in the former opinion, as to the propriety of exercising the taxing power for such purposes, counsel insist that that question is for the legislative branch of the government and not for the courts. This may be conceded, but still, if taxes are to be imposed upon the whole body of taxpayers by a vote of a certain proportion of them for the purpose, not of exercising any legitimate function of government, but solely for the purpose of making a gift in aid of an enterprise quasi-public in its nature, but still of a business character, it is the duty of the courts to see that such power is not abused; that the donees bring

themselves within the strict terms of the grant, and that the donors receive precisely what they bargain for."

The doctrines announced in the opinions of this court, from which we have quoted, are directly pertinent and applicable in and to the state of facts of the case at bar and must govern its decision.

There are other questions argued in the briefs, and they were also presented in the oral argument, but, in view of the disposition of the cause which must follow from the conclusion reached on the grounds which we have considered and determined, their discussion is unnecessary and will be omitted. The judgment of the district court is

AFFIRMED.