248 N.W.2d 752 (1976)
197 Neb. 303
Gerald KING, etc., Appellant,
v.
The SCHOOL DISTRICT OF OMAHA, IN the COUNTY OF DOUGLAS, in the State of Nebraska, a political subdivision of the State of Nebraska, Appellee.
No. 40620.
Supreme Court of Nebraska.
December 29, 1976.
*754 Mark D. McGuire, of Crosby, Guensel, Davis, Kessner & Kuester, Lincoln, for appellant.
Alex M. Clarke, of Baird, Holm, McEachen, Pedersen, Hamann & Haggart, Omaha, for appellee.
Heard before WHITE, C. J., McCOWN, and CLINTON, JJ., and STUART and RIST, District Judges.
RIST, District Judge.
This is an action for a declaratory judgment wherein the plaintiff seeks a construction of section 55-160, R.R.S.1943, which would require the defendant, his employer, to pay his full salary for all working days while he was on active duty with the Nebraska National Guard during an emergency. The trial court determined that under the above statute plaintiff was entitled to receive from the defendant that portion of his salary or compensation as would equal the loss he might suffer while in such active service and entered its judgment accordingly. The plaintiff has appealed from that judgment.
This action was tried upon a joint stipulation of facts by the parties, the relevant portions of which are as follows: Plaintiff was a certified schoolteacher under employment contract with the defendant school district for the school year 1974-75 to teach for approximately 190 days. Plaintiff's salary was payable in 12 monthly installments.
Plaintiff was a member of the Nebraska National Guard and after a tornado struck the City of Omaha on May 6, 1975, was called to active service that date pursuant to a declaration of emergency by the Governor of Nebraska. Plaintiff's guard service for that purpose was from May 6, 1975, through May 13, 1975.
On June 23, 1975, defendant district advised plaintiff by letter that his salary from the district would be reduced by the amount of pay plaintiff received from the National Guard for those days plaintiff was on such active emergency service. Specifically, his salary was reduced on a per diem basis for only those days of teaching duty during which he was on such active guard duty.
The plaintiff attended a regular summer training camp of the National Guard for 2 weeks during the summer of 1975, during which time he had no school duties to perform and thus missed no school duty days as a result of such attendance.
The parties agree that section 55-160, R.R.S.1943, is the controlling statute with respect to school salary and National Guard service during emergency active duty.
Section 55-160, R.R.S.1943, provides that: "All employees * * * of the State of Nebraska, or any political subdivision thereof, who shall be members of the National Guard * * * shall be entitled to leave of absence from their respective duties, without loss of pay, on all days during which they are employed with or without pay under the orders or authorization of competent authority in the active service of the state * * * for not to exceed fifteen work days in any one calendar year. * * * When the Governor of this state shall declare that a state of emergency exists, and any of the persons named in this section are ordered to active service of the state, an additional leave of absence will be granted until such member is released from active service by competent authority. During the additional leave of absence because of the call of the Governor, any * * employee subject to the provisions of this section shall receive such portion of his salary or compensation as will equal the loss he may suffer while in active service of the state."
Section 55-104, R.R.S.1943, provides that unless the context otherwise requires, the words "active service of the state" shall mean "service on behalf of this state, in case of public disaster, war, riot, invasion, insurrection, resisting of process, or in case of imminent danger of the occurrence of any such events, whenever called upon in aid of civil authorities, at encampments whether ordered by state or federal authority, at periods of drill and any other training or service required under state or federal *755 law, regulations or orders, or upon any other duty requiring the entire time of the * * * person."
Section 55-114, R.R.S.1943, provides in part: "The Nebraska National Guard shall encamp for instruction not less than fifteen days annually at such time, place, or places as may be ordered by the Governor."
Plaintiff's argument appears to be that the provisions of section 55-160 should be applied in consecutive order, that is, that the first 15 days of active service each calendar year are to be without any reduction in the employee's salary from his public employer, whether such service be of an emergency nature or otherwise, and thereafter, if an emergency is declared and the employee called to active service, he would receive from his employer during such emergency duty the difference between his normal employment salary and his National Guard pay.
Defendant's argument is that regular employment salary during emergency duty is governed specifically by the provisions requiring the employer to pay the difference between regular employment salary and National Guard pay regardless of when such service is rendered during the year and that the provision for 15 days regular employment pay without deduction applies to all other periods of active duty, exclusive of emergency duty, whenever such duty is performed. The trial court accepted this position.
The following rules governing statutory construction are applicable in this case: Legislative intent is the cardinal rule in the construction of statutes. Pettigrew v. Home Ins. Co., 191 Neb. 312, 214 N.W.2d 920. To ascertain such intent, the court will not examine an operative provision without likewise examining the statute as a whole in the light of objects and purposes of the act. State v. Neal, 187 Neb. 413, 191 N.W.2d 458. The Legislature will be presumed to have known preexisting law when it enacted an amendment to a statute. Insurance Co. of North America v. County of Hall, 188 Neb. 609, 198 N.W.2d 490.
In applying the foregoing rules we note that section 55-160 was enacted in its present form in 1969 when that portion of the section beginning with the words "when the Governor of this State * * *" was added by amendment. Prior to that date the statute was designated as section 55-156.01, R.R.S.1943 (Reissue 1960), and provided in substance for 15 days leave of absence for active duty each year without loss of regular employment salary and with no further qualification. It was essentially the same as that part of section 55-160 preceding the portion added by amendment in 1969.
The amendment of 1969 added the provision that when a state of emergency is declared by the Governor and a guardsman is called to active service, he shall have an additional leave of absence and shall receive during such service that portion of his salary as will equal the loss he may have suffered while in such active service. It is clear that this means he will receive his regular salary during such service less his guard pay for that period. It is also clear that the Legislature intended this as an additional provision for leave and pay to that which previously existed.
We also note that 1969 amendment to section 55-114, R.R.S.1943, which requires not less than 15 days annual encampment for training and instruction. This statute is still in effect and is mandatory in its terms. Under the rules of construction previously noted the Legislature is presumed to have known the provisions of this statute when it enacted the amendment to section 55-160.
It is also material to the interpretation of section 55-160 that it applies to all employees of the State and any political subdivisions thereof, not just to a person who teaches in the public schools. We take judicial notice of the fact that most such employment is continuous throughout the year and not just for approximately 190 working days as is common for teaching employment. This circumstance must be assumed to have been known by the Legislature.
*756 With the above facts in mind and taking into account the language used in section 55-160, it is clear that the Legislature intended that nonemergency duty result in no salary deduction for 15 days and that salary during emergency duty be adjusted as provided in the 1969 amendment so that the guardsman would suffer no financial loss insofar as salary is concerned. If it were otherwise and the statute interpreted as suggested by plaintiff, a guardsman could be called to emergency duty for 15 days or less early in the year before any other duty was required and receive his salary in full; but when he later reported for other duty under section 55-114 he would receive no part of his salary for any duty period beyond the initial 15 days for that year. We are satisfied this is not what the Legislature intended.
The statement of the introducer of the amendment noted by plaintiff in his brief is appropriate, namely, that it was necessary to keep up the morale of the guardsmen and reduce the sacrifice of the enlisted men when ordered to active duty. This end would not be accomplished under the usual employment of guardsmen unless emergency duty is treated as a separate and distinct leave of absence with the accompanying salary provisions there contained.
Plaintiff argues that section 55-104(2) R.R.S.1943, defines active service as including duty during cases of public disaster when so ordered and that this emergency service is within the meaning of active service as used in the first portion of section 55-160 providing for 15 days without any reduction of employment salary. While it is true that section 55-104(2) so defines active service, it is also true that the Legislature has the right, for purposes of salary consideration, to distinguish the types of service within the all-inclusive definition of this statute and when the language of the appropriate statute does so in clear fashion, as we find section 55-160 does, it cannot be ignored and must be given meaning and effect.
The trial court's decision was correct and is affirmed.
AFFIRMED.