REQUESTED BY: Gary D. Gustafson, Executive Secretary, Nebraska Power Review Board.
Does section 70-1012, R.S.Supp. 1979, permit a municipality to replace an existing plan of less than 25,000 kilowatts without approval of the Nebraska Power Review Board?
Only if the existing plant is being replaced by one of the same size and the newly constructed plant will not be used to supply wholesale power to customers outside the applicant's existing retail service or chartered territory.
The Nebraska Power Review Board was created by the Nebraska Legislature via section 70-1003, R.R.S. 1943, to carry out the public policy declared in section 70-1001, R.R.S. 1943. To wit:
 "In order to provide the citizens of the state with adequate electric service at as low overall cost as possible, consistent with sound business practices, it is the policy of this state to avoid and eliminate conflict and competition between public power districts, public power and irrigation districts, municipalities, electric membership associations; and cooperatives in furnishing electric energy to retail and wholesale customers, to avoid and eliminate the duplication of facilities and resources which result therefrom, and to facilitate the settlement of rate disputes between suppliers of electricity."
In 1979, the Eighty-Sixth Legislature passed LB 119 which, broadly stated, concerns itself with construction of electrical generation facilities by municipalities. LB 119 now appears as section 70-1012, R.S.Supp. 1979. That section provides, inter alia, that:
 "Before any electric generation facilities or any transmission lines or related facilities carrying more than seven hundred volts are constructed by any supplier, an application, filed with the board and containing such information as the board shall prescribe, shall be approved by the board, except that such approval shall not be required . . . (2) for any generation facility when the board finds that: (a) Such facility is being constructed to replace a generating plant owned by the municipality with a capacity not greater than that of the plant being replaced, (b) such facility will generate less than twenty-five thousand kilowatts of electric energy at rated capacity, and (c) the applicant will not use the plant or transmission capacity to supply wholesale power to customers outside the applicant's existing retail service area or chartered territory."
You advise us that there is some disagreement over the interpretation of the statute set forth immediately above, and correspondingly seek our opinion and guidance in that connection. A facial reading of the pertinent parts of the statute could, perhaps, give rise to disagreement over its meaning.
More specifically, it has been suggested, that a municipality planning to construct a generating plant with less than 25,000 kilowatts of energy at rated capacity can forego obtaining approval of the board even though the proposed facility was being constructed to replace a generating plant of lesser capacity.
We note at the outset, that nothing in the language of section 70-1012 absolves any supplier intending to construct electric generation facilities or related facilities carry more than 700 volts, from the requirement of filing with the board `an application . . . containing such information as the board shall prescribe.' That filing requirement obtains in any event. However, the approval (for construction) of the Power Review Board is not required for i.e. generation facilities if the board finds (from the information contained on the required application) that the construction is exempted by subsections (a), (b) and (c). The question you pose, in turn, centers on the interpretation of those subsections.
In resolving that question, the guiding principle of law has become a familiar judicial litany i.e., `in the interpretation or construction of statutes, ascertainment of the intention of the Legislature is the end or purpose to be accomplished.' State v. Moore, 45 Neb. 12, 63 N.W. 130
(1895); Little v. State, 60 Neb. 749, 84 N.W. 248 (1900);King of Trails Bridge Co. v. Plattsmouth Auto WagonBridge Co., 114 Neb. 734, 209 N.W. 497 (1926); HubbellBank v. Bryan, 124 Neb. 51, 245 N.W. 20 (1932), cert.denied, 289 U.S. 753, 77 L.Ed. 1498, 53 S.Ct. 785; Brown v.Sullivan, 195 Neb. 729, 240 N.W.2d 51 (1976); King v.School District of Omaha, 197 Neb. 303, 248 N.W.2d 752
(1976).
In accordance with the cardinal rules construction, we examined the legislative history of LB 119. That examination, in turn, resolved any and all doubts as to the meaning of the statute now in question. More specifically we note, for example, that Senator Fowler, who introduced LB 119, also sponsored an amendment to it. It was Senator Fowler's amendment that provided that portion of section 70-1012 we are now considering. With reference to that amendment, Senator Fowler stated:
 ". . . This is a grandperson clause. The concept here is that for a municipality that is replacing a small generating unit that it has approval for, and replacing that one of the same size, it doesn't have to go through the whole Power Review Board hearing if its less than 25 megawatts or 25,000 kilowatts. . ."
During the legislative debate on Senator Fowler's amendment, he further stated:
 ". . . It doesn't mean that the Power Review Board would deny them getting a 20 megawatt plant to replace 15 megawatts or anything like that. All it says is it has to be reviewed. . ."
And finally, illumination on the meaning of the exceptions in section 70-1012 was again provided by Senator Fowler during the debate when he stated:
 "The reason for the (a) part of the amendment is simply that if they're replacing the existing capacity, they don't have to go to the Power Review Board, but any sort of growth has to be reviewed by the Power Review Board and that's why we said no greater than what is the current capacity. Again, I stress that it doesn't mean that the plant can't be built. Now everyone seems to think that the Power Review Board automatically is going to vote against these. The only reasons they'd vote against them is if they were economically unfeasible according to their guidelines. So, it seems to be me that we're trying to do is grandfather in the existing capacity, but as Senator Kelly pointed out, future growth should be reviewed by some coordinating entity, and that's why we have that language."
The foregoing quotations taken from the legislative history serve only to illustrate, and do not constitute the entirety, of the debate comment which buttresses our conclusion to the question posed above. The interpretation we have made, comports with our Supreme Court's admonishment that:
 "When the intent of the Legislature is clear, it is the duty of the courts to construe it in accordance with such intent. As sensible construction will be placed on it to effectuate the object of the legislation rather than the literal meaning that would have the effect of defeating the legislative intent." Keller v. State Department of Roads, 184 Neb. 853, 172 N.W.2d 782 (1969).
In conclusion, we are of the opinion, that any supplier intending to construct electric generation facilities or related facilities carrying more than 700 volts must file an application containing information prescribed by the Power Review Board with the Power Review Board. Only if the application shows that the existing plant supplies less than 25,000 kilowatts of energy capacity, is being replaced by one of the same size and the plant will not be used to supply wholesale power to customers outside the applicant's existing retail service or chartered territory is the Power Review Board's approval of such construction unnecessary.